Jeffrey J. Goulder (010258)
Stefan M. Palys (024752)
**STINSON MORRISON HECKER LLP**
1850 North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4584
Tel: (602) 279-1600
Fax: (602) 240-6925
Email: jgoulder@stinson.com
       spalys@stinson.com
Attorneys for JPMC 2005-LDP4
Papago Spectrum, LLC

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| 1225 West Washington, LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>JPMC 2005-LDP4 Papago Spectrum, LLC, a Delaware limited liability company,<br><br>Defendant. | No. 2:12-cv-01611-FJM<br><br>**MOTION FOR SUMMARY JUDGMENT**<br><br>(Assigned to the Hon. Frederick J. Martone)<br><br>**(Oral Argument Requested)** |

This case arises out of negotiations between two companies for the possible sale by Defendant to Plaintiff of a ground sub-leasehold interest in land and improvements. Defendant ultimately canceled the negotiations, as it was expressly entitled to do. Though Defendant acted at all times within its explicit legal rights, Plaintiff has nevertheless sued as a result of the cancellation. The causes of action Plaintiff has asserted – and that this motion seeks to dispose of – are: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) unjust enrichment; (4) negligent misrepresentation; (5) consumer fraud; and (6) specific performance.

All of these claims fail as a matter of law for the simple reason that an interim contract the parties signed, and a separate, final contract the parties were negotiating towards – but never signed – provided that no contract would be formed unless the final contract was: (1) approved by Defendant's "Senior Management;" (2) fully executed;

1 and (3) unconditionally delivered by Defendant to Plaintiff. These conditions precedent to the formation of a contract never occurred. Thus, there was no contract – only negotiations. As Plaintiff's entire complaint is premised on the existence of an enforceable, final agreement, Defendant is entitled to summary judgment on Plaintiff's complaint pursuant to Fed. R. Civ. P. 56.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Factual Background.

Defendant owns a ground sub-leasehold interest in land and improvements thereon, including a commercial office building, as well as associated personal property at 1225 West Washington in Tempe, Arizona (the "Property"). *See* Plaintiff's Statement of Fact ("JSOF") ¶ 1. Defendant marketed the Property for sale, and on August 19, 2011, it received a written purchase offer for $22 million (the "Offer") from GLL Real Estate Partners, Inc. ("GLL"). *Id*. at ¶ 2. The Offer stated that "no binding agreement will be created unless and until both [GLL] and [Defendant] execute a purchase and sale contract ('P&S Agreement')." *Id*. (Offer p.2). GLL's Offer further stated that "the execution of [the Offer] does not become a binding offer to purchase or sell, and shall not become a binding contract to purchase or sell the Property." *Id*. (Offer § 10). The Offer also provided that "[n]otwithstanding the contents of this letter or any other past, present or future written or oral indications of assent or indications of results of negotiation or agreement to some or all matters then under negotiation, it is specifically understood that . . . no binding agreement or contract shall be created unless and until [Defendant] and [GLL] execute the P&S Agreement." *Id.*

On September 1, 2011 the parties executed a License, Early Termination and Indemnification Agreement (the "License Agreement"), which, among other things governed GLL's due diligence process and the parties' continued negotiations towards the P&S Agreement. *Id*. at ¶ 3. The License Agreement was between Defendant and GLL, "or its nominee," which GLL later designated as Plaintiff. *Id*. The License

1 Agreement states that it was the entire agreement between the parties. *Id.* (License
2 Agreement § 9). It further stated that it was being signed "in anticipation of potentially
3 entering into the Purchase Agreement," which the parties "are negotiating." *Id.*
4 (License Agreement p.1). The License Agreement recites four times that it would be
5 replaced by a P&S Agreement, though it said neither party was under any obligation to
6 enter into the P&S Agreement. *Id.* (License Agreement p.1, § 7). It also provided that
7 negotiations could be terminated in writing by either party. *Id.* (License Agreement
8 § 1(i)). By signing the License Agreement, GLL and Plaintiff, as its nominee, agreed
9 that no emails or oral communications would create a binding contract:

> [GLL] acknowledges and agrees that during its prosecution of the Permitted Due Diligence, no person acting on behalf of Seller is authorized to make and [GLL] acknowledges that no person has made, any representation, agreement, statement, warranty, guaranty or promise regarding the Property or the transactions contemplated herein; and no such representation, . . . agreement, . . . statement or promise, if any, made by any person acting on behalf of [Defendant] shall be valid or binding upon seller unless expressly set forth herein or in the [P&S] Agreement."

15 *See* JSOF ¶ 3 (License Agreement § 5). Reiterating these points, the License
16 Agreement states that [a]ny legally binding agreement or obligation between the parties
17 for the purchase and sale shall arise if, and only if, the parties execute and deliver the
18 [P&S] Agreement." *Id*. (License Agreement § 16).

19 GLL sent its first comments on the draft of the P&S Agreement on August 19,
20 2011. *See* JSOF ¶ 4. The draft P&S Agreement that GLL sent – like all subsequent
21 drafts throughout the negotiations – stated that it was not binding until approved by
22 Defendant's senior management and signed:

> <u>Requisite Senior Management Approval</u>. Prior to execution and delivery of this Agreement by Seller, this Agreement is subject to approval by Seller's senior management. Neither the submission of any proposal or this Agreement for examination to Buyer, nor any correspondence or course of dealing between Buyer and Seller shall constitute a reservation of or option for the Property or in any manner bind Seller. ***No contract or obligation on the part of the Seller shall arise until this Agreement is approved by Seller's senior management and fully executed and unconditionally delivered by Seller.*** If, however, Seller executes and

3

>returns this Agreement to Buyer, the requirement for Senior Management Approval shall be deemed satisfied.

*Id.* (draft P&S Agreement at § 12.14 (emphasis added)).

Defendant elected to terminate the negotiations on June 8, 2012. *Id*. at ¶ 5. No approval of Defendant's senior management had been given, and the P&S Agreement had not been signed. *Id.* at ¶ 6. Scrambling to position itself for this lawsuit, GLL sent a redlined copy of the P&S Agreement later that same day. *Id*. at ¶ 7. That last, post-termination draft of the P&S Agreement that GLL sent still contained the clause cautioning that "[n]o contract or obligation on the part of [Defendant] shall arise until this Agreement is approved by [Defendant's] senior management and fully executed and unconditionally delivered by [Defendant]." *Id.* (draft P&S Agreement at § 12.14). Defendant never signed the agreement. *Id*. at ¶ 8.

Notwithstanding the approval and execution requirements in the Offer, the License Agreement, and every draft of the P&S Agreement – and although Defendant never approved, signed, or delivered the P&S Agreement – Plaintiff relies on emails exchanged between the parties as the basis for the alleged contract it now seeks to enforce. See Complaint ¶¶ 19-39. For the reasons explained below, Plaintiff's claims are not tenable, and the Complaint should be dismissed.

## II.     The Complaint Fails Because There Was Never a Binding Contract.

Plaintiff's entire complaint hinges on whether the parties had a binding contract to sell the leasehold interest. It asserts, for example, that Defendant breached a contract allegedly formed by the parties' email negotiations. *See, e.g.,* Complaint ¶¶ 13-39, 56. Plaintiff further contends that Defendant breached a contractual duty of good faith and fair dealing, and engaged in consumer fraud and negligent misrepresentation by putting the Property back on the market. *See* Complaint Counts I, II, IV-V. Plaintiff seeks specific performance of the agreement it alleges had been reached. *Id.* at VI. These claims are all barred by the parties' agreement not to be bound unless and until a P&S Agreement was executed.

4

### A. Arizona and the Ninth Circuit Require Objective Evidence of an Intent to be Bound.

In Arizona, a contract exists only when there is an "intent to be bound" that is established by objective evidence.  *Wippman v. Rowe*, 540 P.2d 141, 144 (Ariz. App. 1975) (the "intent to be bound" may only be shown by the parties' statements, rather than their subjective, unspoken understandings); *Spain v. Valley Forge Ins. Co.*, 731 P.2d 84, 89 (Ariz. 1986) ("In using the word 'intent,' we did not mean to intimate that [a party's] subjective, uncommunicated desires were relevant.").

As to whether negotiations manifest an intent to be bound, Arizona has adopted RESTATEMENT (SECOND) OF CONTRACTS § 27 (the "Restatement").  *Ry-Tan Constr., Inc. v. Wash. Elem. Sch. Dist. No. 6*, 111 P.3d 1019, 1021, ¶ 16 (Ariz. 2005). Restatement § 27 provides that "preliminary negotiations and agreements do not constitute a contract" if "either party knows or has reason to know that the other party regards the agreement as incomplete and intends that no obligation shall exist until other terms are assented to ***or until the whole has been reduced to another written form*** . . . ." *See* Restatement § 27, cmt. b (emphasis added).

Two cases applying Restatement § 27 – *Johnson International v. City of Phoenix*, 967 P.2d 607 (Ariz. App. 1998) and *Rennick v. O.P.T.I.O.N. Care, Inc.*, 77 F.3d 309 (9th Cir. 1996) – dictate that Plaintiff's claims be dismissed.  In *Johnson International*, the court applied Restatement § 27 and determined that no contract existed because the parties' dealings evidenced no intent to be bound – necessary board approval had not been received and the contract was not signed.  967 P.2d at 612, ¶ 31.  In *Johnson*, the Plaintiff was negotiating to buy land from the City of Phoenix.  *Id*. at 608, ¶ 4.  The parties executed a memorandum of understanding ("MOU") concerning their future negotiations that stated "[t]his memorandum is not intended to be the final agreement or to include all of the material terms, which shall be subject to further negotiations, and it shall not be binding on either party."  *Id*. at 608-09, ¶¶ 4-5.  The MOU further stated that any future agreement would have to be approved by the Bureau of Reclamation

5

1 ("BOR").  *Id*. at 609, ¶ 6.  Johnson spent "substantial sums of money" on its due
2 diligence over the next two-and-a-half years of negotiations.  *Id*. at 609, ¶¶ 6-7.  While
3 the City approved a contract, the BOR did not.  *Id*. at ¶¶ 8-10.  Ultimately, the City
4 terminated negotiations while BOR approval was pending.  *Id.*

5 The Court of Appeals affirmed the trial court's grant of the City's motion to
6 dismiss on the basis that no contract was formed.  *Id.* at 609, ¶¶ 12, 14-17; *id.* at 616,
7 ¶ 55.  Applying Restatement § 27, the Court of Appeals held that "[t]he circumstances
8 of this case indicate the City's intent not to be bound."  *Id*. at 611-12, ¶¶ 26-27.  It
9 reasoned that "[f]rom the very beginning of the[] negotiations, it was expressly provided
10 that the [final agreement] would not become effective without BOR approval," which
11 had not been obtained.  *Id*. at 612, ¶ 27.  Moreover, the agreements the parties circulated
12 were stamped "draft," and contained language requiring BOR approval before they were
13 binding.  *Id*. at ¶ 31.  These circumstances showed "the lack of the City's intent to be
14 bound [and] preclude[d] a contract formation."  *Id*.  The Court therefore concluded "that
15 where there is an express nonbinding clause, we will honor it and not look to
16 surrounding circumstances to imply an obligation at variance with the express clause."
17 *Id*. at 614, ¶ 43.

18 The Ninth Circuit reached a similar conclusion in *Rennick*.  Relying on
19 Restatement § 27, the court held that a binding contract had not been reached because
20 the objective facts showed no intent to be bound.  77 F.3d at 314-16.  The plaintiffs
21 negotiated to enter into a franchise contract with the defendant.  *Id*. at 311.  At an initial
22 meeting, the parties outlined the terms of an agreement that was subject to approval of
23 defendant's board.  *Id*.  The parties ended their meeting with a "handshake deal."  *Id*. at
24 311-12.  Thereafter, the parties circulated a letter of intent that ultimately included
25 language that there was not yet a binding contract; that signing the letter of intent did
26 not create a binding contract; and that any binding contract would require board

27
28

6

1 approval. *Id*. at 312-13. When no final contract was signed, the plaintiff sued to
2 enforce the handshake agreement. *Id*. at 313.

3       The Ninth Circuit applied Restatement § 27, cmt. b, and affirmed the district
4 court's grant of summary judgment in favor of the defendants. *Id*. at 313-14. The
5 negotiations did not give rise to a binding contract, the Ninth Circuit reasoned, because
6 the parties "expressly agreed that they did not yet have a contract" in the letter of intent.
7 *Id*. at 314. The court noted that a letter of intent is an agreement entered into "so that
8 people negotiating toward an agreement, who do not yet have one, can get their
9 preliminary inclinations down on paper without committing themselves." *Id*. at 314-15.
10 Those purposes "are defeated if what was meant to be a nonbinding letter of intent is
11 allowed to form the basis of a damages award." *Id*. at 315.

12       The court also emphasized that "[i]f there is a manifest intention that the formal
13 agreement is not to be complete until reduced to a formal writing to be executed, there
14 is no binding contract until this is done." *Id.* (quotation omitted). By its terms, the
15 letter of intent stated that the parties were merely working towards a future agreement,
16 and that one would only arise by a formal written contract approved by the parties and
17 their boards. *Id.* at 315-16. The Ninth Circuit concluded that "the rights of private
18 parties to enter into contracts also embraces their rights not to, and there is no contract
19 where the objective manifestations of intent demonstrate that the parties chose not to
20 bind themselves until a subsequent agreement is made." *Id*. at 316. Having exhibited
21 an intent not to be bound, the Ninth Circuit held that the district court properly granted
22 summary judgment. *Id.* As the Court so aptly noted, "[t]here is no dishonor in refusing
23 to be bound by a contract to which a party expressly said it was not yet prepared to
24 agree." *Id*. at 314.

25     **B.**    **The Parties Expressly Agreed Not to be Bound Unless the P&S Agreement Was Signed, As in *Johnson International* and *Rennick*.**
26

27       As in *Johnson International* and *Rennick*, the parties here agreed before
28 negotiations commenced that they would not be bound unless and until there was a final

7

signed contract approved by Defendant's Senior Management; fully executed by the parties; and unconditionally delivered by Defendant to Plaintiff. As in *Johnson International* and *Rennick*, these conditions were never satisfied, so a contract was never formed.

Plaintiff's attempts to cherry-pick emails to try to manufacture a "contract" must be rejected. The parties' pre-negotiation documents, and the drafts of the P&S Agreement (even including the draft sent by Plaintiff to Defendant after Plaintiff canceled), all show that the parties agreed such email communications would not constitute a contract. *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 745 (8th Cir. 2002) (if "pluck[ing] disconnected statements from various meetings and phone calls . . . were held adequate to establish an oral contract, it would be rarely the case that any failed contract negotiation could not, through the use of selective excerpts of the negotiations, be contorted into an oral contract.").

Because there is no contract, Defendant is entitled to summary judgment on Plaintiff's breach of contract claim (Count I). Because there is no contract to enforce, Defendant is also entitled to summary judgment on Plaintiff's claim for specific performance (Count VI).[1]

**III.   The Terms of the License Agreement Bar the Good Faith and Fair Dealing Claim.**

Plaintiff contends that Defendant breached the duty of good faith and fair dealing implicit in its alleged contract by: (1) not disclosing that Defendant was preparing the Property to go back on the market; and (2) misappropriating some unidentified benefits allegedly conferred upon Defendant by Plaintiff and its counsel. *See* Complaint ¶ 67.

---

[1] Alternatively, Defendant is entitled to summary judgment on the "claim" for specific performance because it is not an independent cause of action, but is rather a remedy. *See, e.g., Dialog4 Sys. Eng'g GmbH v. Circuit Research Labs, Inc.*, 622 F. Supp. 2d 814, 824 (D. Ariz. 2009) ("Specific performance is an equitable remedy" (internal quotations omitted)); *Lorterdan Props. at Ramapo I, LLC v. Watchtower Bible & Tract Soc'y of N.Y., Inc.*, 2012 U.S. Dist. Lexis 95693, 31 (S.D.N.Y. 2012) (noting specific performance is a remedy rather than a cause of action, and collecting cases in accord).

8

1  The Court should reject this claim out of hand because it too is premised on a contract that never existed.  Without a contract, there cannot be a duty of good faith and fair dealing to breach.  *Wells Fargo Bank v. Arizona Laborers*, 38 P.3d 12, 28, ¶ 59 (Ariz. 2002) (duty "*exists by virtue of a contractual relationship*" and "prohibits a party from doing anything to prevent *other parties to the contract* from receiving the benefits and entitlements *of the agreement*" (emphasis added)); *Keith v. Thompson*, 2007 WL 4592130, 3 (E.D. Mo. 2007) ("it is impossible for a party to breach a contract before it is formed").

Nor can the breach of the duty of good faith and fair dealing claim be based on the License Agreement – the agreement the parties did sign – because the duty of good faith and fair dealing cannot be used to prohibit what the contract expressly permits.  *Bike Fashion Corp. v. Kramer*, 46 P.3d 431, 435, ¶ 14 (Ariz. App. 2002).  Here, the License Agreement permitted either party to terminate the negotiations before the P&S Agreement was signed.  *See* JSOF ¶ 5 (License Agreement § 1).  Defendant did so.  *See* JSOF ¶¶ 3-5.  Once terminated, there was no contractual duty of good faith and fair dealing that prohibited Defendant from putting the Property back on the market.

For the same reason, Plaintiff cannot complain that Defendant supposedly "misappropriate[ed] the benefits conferred" by Plaintiff and its counsel.  *See* Complaint ¶ 67.  The License Agreement states that Defendant "shall have no obligation to pay for and/or reimburse [Plaintiff] for any [] costs and expenses [of due diligence], regardless of whether or not a [P&S] Agreement is entered into . . . ."  *See* JSOF ¶ 3 (License Agreement, Ex. B, p.2 at (j)).  Plaintiff cannot use the implied duty of good faith and fair dealing to contradict that express agreement.

**IV.   The Unjust Enrichment Claim Is Barred by the License Agreement.**

Plaintiff's unjust enrichment claim alleges that Defendant has been "unjustly enriched" by Plaintiff's due diligence.  *See* Complaint ¶¶ 77-78.  "Where there is a specific contract which governs the relationship of the parties, the doctrine of unjust

9

enrichment has no application." *Adelman v. Christy*, 90 F. Supp. 2d 1034, 1045 (D. Ariz. 2000) (citing *Brooks v. Valley Nat'l Bank*, 548 P.2d 1166, 1171 (Ariz. 1976)). As noted above, the License Agreement states that Defendant has no obligation to pay for and/or reimburse Plaintiff for any costs and expenses associated with the due diligence process. *See* JSOF ¶ 3 (License Agreement, Ex. B.). This express term bars Plaintiff's unjust enrichment claim.

## V. The Negligent Misrepresentation and Consumer Fraud Claims Fail.

### A. Plaintiff Could Not Reasonably Rely on the Alleged Statements as a Matter of Law.

Plaintiff's negligent misrepresentation and consumer fraud claims are another effort to evade the express terms of the License Agreement.[2] Plaintiff alleges that Defendant failed to disclose that it was going to put the Property back on the market, and that the sale would close. *See* Complaint at ¶ 81. The License Agreement, however, stated that it could be terminated at any time, that Plaintiff knew no one could make promises about closing on behalf of Defendant, and that no such statement would be binding absent a signed contract. *See* JSOF ¶ 3 (License Agreement §§ 1 and 7). Plaintiff's claims require proof of reliance. *See, e.g., Kuehn v. Stanley*, 91 P.3d 346, 350-51, ¶¶ 12, 17 (Ariz. App. 2004) (consumer fraud and negligent misrepresentation); Complaint ¶¶ 84, 90. Given the limiting language in the contract just described, Plaintiff could not have relied on the alleged statements or omissions by Defendant as a matter of law. *Kuehn*, 91 P.3d at 350, ¶ 15 (limiting language in appraisal precluded reliance); *Landale Enters., Inc. v. Berry*, 676 F.2d 506, 508 (11th Cir. 1982) (a "specific disclaimer of reliance on the representations defeats the fraud claim. To hold otherwise would be to say that it is impossible for two businessmen dealing at arms' length to

---

[2] Defendant assumes that the consumer fraud claim is premised on the same allegations as the negligent misrepresentation claim. The complaint fails to explain what actions or statements are the basis of the consumer fraud claim, however. *See* Complaint ¶¶ 87-91. Thus, Defendant is also entitled to summary judgment because the complaint does not comply with Ariz. R. Civ. P. 9(b). *Silving v. Wells Fargo Bank, N.A.*, 800 F. Supp. 2d 1055, 1075 (D. Ariz. 2011) (consumer fraud claims must comply with Rule 9(b)).

10

agree that the buyer is not relying on the representations by the seller . . . ." (citations omitted)).

### B.  The Alleged Statements and Omissions Are Not Actionable.

The two statements or omissions Plaintiff identifies are not actionable. Plaintiff complains that Defendant failed to disclose that it was going to put the Property back on the market. *See* Complaint ¶ 81. That allegation cannot support a negligent misrepresentation claim because Defendant had no affirmative duty to disclose that information, and without such a duty negligent misrepresentation cannot exist. *Wells Fargo Bank*, 38 P.3d at 21 and 35-36, ¶¶ 19 and ¶ 95 (Ariz. 2002) (noting duty to disclose required for misrepresentation claim based on non-disclosure).[3]

Plaintiff also claims that Defendant negligently stated that it intended to close on the sale in the future. *See* Complaint ¶ 81. Statements of future intent are only actionable if the party makes the statement with the present intent not to perform, so one cannot "negligently" make a representation about a future event. *Smith v. JPMorgan Chase Bank*, 2011 WL 3235843, 4 (D. Ariz. 2011) ("A claim for negligent misrepresentation cannot stand on promises of future conduct and, unlike fraud, cannot even stand on a promise made without present intention to perform." (collecting cases, internal quotations omitted)). Accordingly, Defendant is entitled to summary judgment on the claims.

. . .

. . .

. . .

---

[3] This discussion is equally applicable to the good faith and fair dealing claim, to the extent premised on a non-disclosure.

11

## VI. Conclusion.

Plaintiff agreed that its negotiations with Defendant would not form a binding contract. Through its lawsuit, Plaintiff asserts claims arising from an alleged contract that never existed as a matter of law. The Court should grant summary judgment in Defendant's favor, and award Defendant its attorneys' fees pursuant to the parties' contracts (JSOF ¶ 3 (License Agreement § 14)) and A.R.S. § 12-341.01.

RESPECTFULLY SUBMITTED this 14th day of August, 2012.

**STINSON MORRISON HECKER LLP**

By: /s/ Stefan M. Palys
Jeffrey J. Goulder
Stefan M. Palys
1850 North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4584
Attorneys for JPMC 2005-LDP4 Papago Spectrum, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on August 14, 2012, I caused the foregoing document to be filed electronically with the Clerk of Court through ECF to:

James A. Craft
Christopher L. Hering
GAMMAGE & BURNHAM P.L.C.
Two North Central Avenue
15th Floor
Phoenix, AZ 85004
602-256-0566
jcraft@gblaw.com
chering@gblaw.com
Attorneys for Plaintiff

A courtesy copy is being hand-delivered to Judge Martone.

/s  MaryEllen Santana

12

DB04/0835967.0027/6686931.3  DD02